Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the Circuit ' court of Cumberland county; whereby the plaintiff in error was convicted of receiving a stolen horse, knowing it to have been stolen. He was indicted for the offence in the County court of said county. The indictment ’ contained four counts. The first three charged the offence specially, and in different forms, as receiving a stolen horse, knowing it to have been stolen. The fourth simply charged the larceny of a horse, in the common form. This last count would have been sufficient of itself, without the insertion of the others in the indictment. The law'declares that “if any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted.” Code, p. 789, § 20. If a person be indicted for the simple larceny of a thing, and the proof be that it was stolen by some other pei’son, and received by the accused, knowing it to have been stolen, tbej proof will sustain the charge. Because, having received stolen property, knowing it to have been stolen, he is, by law, “ deemed guilty of larceny thereof,” and may be prosecuted as'if he had himself been the actual thief. Still the pleader may, if he choose, charge him specially as the receiver ; and may insert several counts in the indictment charging the offence in both forms, as was done in this case. But as count for simple larceny would be sustained by the proof whether it was that the accused actually stole the thing, or that he received it knowing it to have been stolen, and as simplicity and brevity in pleading, especially in criminal cases, is desirable, the better practice would seem to be to count in such cases as for simple larceny only.
The accused being arraigned for the offence in the *851 county court on the 3d of March 1871, demanded to he tried therefor in the Circuit court of said county ; which was ordered accordingly. On his arraignment in the Circuit court on the 10th of April 1871, he moved the court to be remanded to the County court for trial; which motion the court overruled. The same motion appears to have been again made afterwards, to wit: on the 14th day of September 1871, when it was again overruled. An exception was taken to the ruling of the court on this latter occasion, being the third exception taken ; and the ground of it was that the Circuit court had no jurisdiction to try the offence. Whether it had or not, is the question we will now proceed to consider.
The act approved April 2, 1870, Acts of Assembly 1869-70, chap. 38, § 4, p. 36, declares that the County courts shall have exclusive original jurisdiction for the trial of all presentments, informations and indictments for offences committed within their respective counties ; except that a person to he tried for arson, or any felony for which he may be punished with' death, may, upon his arraignment in the County court, demand to he tried in the Circuit court having jurisdiction over the county for which said County court is held. The question whether the Circuit court had jurisdiction to try the offence in this case or not depends upon whether the offence may be punished with death or not. The act passed February 12, 1866, entitled “ An act to provide more effectually for the punishment of horse stealing,” Acts of Assembly 1865-6, p. 88-9, chap. 22, declares that the offence ‘ •' shall be punished with death, or, in the discretion of the jury, by confinement in the penitentiary for a period of not less than five nor more than eighteen years. ” If that act was in force when the offence was committed in this case, then there can he no doubt about the question. It is argued that it was repealed by implication, by the act which next follows it, to wit: the act passed February 20, 1866, Id. p. 89, ch. 23, entitled. *852 “An act to amend and re-enact section 14 of chapter 192, of the Code of 1860.” That section, as amended, reads thus : “§ 14. If any person steal from the person of another, money or other thing of the value of five dollars or more, he shall be guilty of grand larceny, and be confined in the penitentiary for a period not less than five nor more than ten years. If any person commit simple larceny, not from the person of another, of goods and chattels, he shall, if they are of the value of twenty dollars or more, be deemed guilty of grand larceny, and he confined in the penitentiary not less than three nor more than ten years ; and if they be of less value than five dollars in the first case, or twenty dollars in the last, he shall he deemed guilty of petit larceny, and be confined in jail not exceeding one year, and at the discretion of the court may be punished with stripes.” That act was amended by an act passed March 4, 1867, Acts of Assembly 1866-7, p. 709, changing twenty to fifty dollars in defining the difference between grand and petit larceny. But that change is immaterial to the question we are now considering.
"We think that chapter 22 was not repealed by chapter 28 of the acts of 1865-6 aforesaid ; and that chapter 22 still remains in full force. Repeals by implication are not favored ; and it cannot be supposed that the Legis-. lature intended to repeal chapter 22 by the very next act which they passed, and which does not expressly, nor by necessary implication, repeal it. They were doubtless engaged in the enactment of the two laws at the same time. They were, emphatically, in pari materia, and must be construed together. They must be read as if they were one and the same act, and the subject of the larceny described in the first, had been expressly excepted in the latter act.
Again it is argued that while chapter 22 aforesaid makes a person “guilty of the larceny of a horse,” &c., punishable with death, it does not make a person “guilty *853 of receiving a stolen horse knowing it to be stolen,” punishable with death ; and therefore, as the accused was convicted of the latter offence, he was convicted of an offence which is not punishable with death, and so, not triable in the Circuit court.
But the Code, ch. 192, §20, p. 789, as we have seen, declares that the receiver of stolen goods knowing them to be stolen, shall be deemed guilty of larceny thereof, and therefore the receiver of a stolen horse knowing it to be stolen, must be deemed guilty of the larceny thereof, within the meaning of chapter 22 of the Acts of 1865-66 aforesaid.
Again, it is argued, that the said chapter is in conflict with the provision of the constitution which declares, that “ no law shall embrace more than one object, which shall be expressed in its title; nor shall any law be revived or amended by reference to its title; but the act revived, or the section amended, shall be re-enacted and published at length.” Alexandria constitution (which was in force when the act in question was passed), Article IV, § 16; present constitution, Article V, § 15. Without considering the question, which seems to have been a vexed one, whether such a constitutional provision is anything more than directory, we do not think that any such conflict exists. Certainly the act in question embraces only one object, which is expressed in its title ; aud it does not revive or amend auy law by reference to its title. Can it be said to revive any act or amend any section, so as to require such act or section to be re-enacted and published at length, in the meaning of the provision aforesaid ? It certainly does not revive any act at all. Eor does it amend any section, within the meaning of the said provision. It is an independent act providing “ more effectually for the punishment of horsestealing.” We have here, in chapters 22 and 23, standing side by side in the Acts of 1865-66, an example of an act which does not, and one which does come *854 within the purview of the constitutional provision aforesaid. Chapter 23 comes within it. That chapter amends and re-enacts section 14, of chapter 192, of the Code, and, in strict pursuance of the constitutional direction, it publishes at length the section as amended.
"We think, therefore, that the Circuit court had jurisdiction of the case, and properly overruled the motion to remove the cause to the County court for trial.
We will next consider the questions arising upon the demurrer to the indictment which was overruled ; and which was the subject of the second bill of exceptions taken on the trial.
Two causes of demurrer are assigned in the bill of exceptions, which we will proceed to consider, in the order in which they are assigned ; and,
First. “ Because the record certified by the clerk of the County court to the Circuit court, does not show whether the indictment was found at a regular or quarterly term of the County court or not.”
By the act approved November 5,1870, entitled, “An act to amend and re-enact chapter 206, of the Code of Virginia, (edition of I860,) as to grand juries,” Acts of Assembly 1869-70, p. 550, chap. 397, it is enacted in § 4, that, “For four of the grand juries in each year, to be designated by such courts, there shall be summoned tw’enty-four citizens of this State, of the county or corporation in which the court is to be held, and in other respects qualified jurors,” &c. “For grand juries ordered for any other term of such courts, there shall be summoned ten citizens of the State, with like qualifications, and subject to the exceptions hereinbefore stated ; and the court may, by direction to its clerk, limit the number of persons to serve thereon, to not less than six. And in § 5, that “ any sixteen or more of such persons summoned to the four regular terms, and any six or more of such persons summoned to any other term, shall be a competent grand jury,” &c. And in § 9, that “ at *855 least twelve of the grand jury, at the four regular terms, and at least five of the grand jury at any other term must concur in finding or making an indictment or presentment,” &e.
The indictment was found in this case at a term of the court held in February 1871, and by a grand jury consisting of eight members. But it nowhere appears in the record, that February term was not one of the four regular terms of said court, to which twenty-four citizens were required to be summoned, to constitute a grand jury as aforesaid. On the contrary, it is said, “ that a table of the terms of the several courts, in said Session Acts of 1869-70, p. 481, indicates February as a quarterly term” of said court. And it is contended, that it is incumbent on the Commonwealth to show, that the indictment was found by a competent grand jury ; and as it was found by a jury consisting of only eight members, that it was found at a term of the court when such a jury was lawful.
We think, according to the maxim, 4 ‘ all things are presumed to be rightly done,” in the absence of evidence to the contrary, that it must be presumed that the indictment in this case was found at a term when a jury might lawfully consist of only eight members, and that it is incumbent on a party interested in denying that fact, to show the contrary. The court may, at any time, designate the four regular or quarterly terms ; and though the February term of the County court of Cumberland, may have been one of those terms when the table aforesaid was published, it may not have been so, and probably was not, when the said indictment was fouud.
We will, now consider the other cause of demurrer assigned in the bill of exceptions ; which is,
Secondly. ‘* Because the record does not show a sufficient finding of the indictment by the grand jury, in that there is no certificate to show that it was endorsed *856 ‘ a true bill’ by the grand jury, and signed by the foreman.”
It has been the general, if not the universal practice in this State, as it has been in most, if not all, of the other States of the Union, and in England, for a grand jury to endorse an indictment found by them, “ a true bill,” and for the foreman to sign his name to the endorsement. In England, the mode in which the grand jury formerly returned the result of their enquiries to the court, was by endorsing on the back of the bill, if thrown out, “ ignofamus,” and if found, billa vera.” But at the present day the endorsement is in English, if found, “a true bill,” and if rejected, “not a true bill,” or, which is the better way, “ not found ;” in which case the party is discharged without further answer. The endorsement, “ a true bill,” made upon the bill, becomes part of the indictment, and renders it a completé accusation against the prisoner. "When the jury have made these endorsements on the bills, they bring, them publicly into court: and the clerk of the peace at sessions, or clerk of assize on the circuit, calls all the jurymen by name, who severally answer to signify that they ¿re present; and then the clerk of the peace, or assize, asks the jury whether they have agreed upon any bills, and bids them present them to the court; which they accordingly do, &c. 1 Chit. Cr. Law, p. 324, marg. This mode of proceeding in England has been substantially pursued in most, if not all, of our American States. But while in England, the endorsement, “a true bill” (which, however, seems not to be required to be signed by the foreman of the grand jury), becomes part of the indictment, and renders it a complete accusation against the prisoner, and seems, therefore, to be necessary to-constitute a good indictment in that country, the weight of authority in this country seems to. be decidedly the other way. In 2 Leading Criminal Cases, 250, The State v. Freeman, 13 New Hamp. R. 488, decided in *857 1843, is given as the leading case on the subject; in which it was held that the omission of the words, “ a true bill,” does not vitiate an indictment. Most of the" other American cases are referred to and commented on in the notes to that case. Two of them, Webster’s case, 5 Greenl. R. 432, and Nomaque’s case, Breese R. 109, sustain the Euglish rule. But recently, in Massachusetts, the leading case aforesaid has been followed and approved, as a “ decision placed upon grounds which are satisfactory and conclusive.” Commonwealth v. Smyth, 11 Cush. R. 473. In that case the indictment was signed by the foreman of the grand jury, and countersigned by the attorney for the Commonwealth ; but the words, “ a true hill,” were no where found upon it. This deficiency, the defendant insisted, was a material arid fatal objection to it: first, because these words are an indispensable part of every indictment; and secondly, because they constitute the only recognized phraseology by which the action of a grand jury, i'n the due presentment of a criminal accusation, can be legally authenticated. Merrick, J., said: “This position seems to be-well warranted by the English decisions and if such an objection were made in those courts, it would-undoubtedly be sustained. For there it is held that these words are not only indispensable to make a com-. píete and valid legal accusation, but that, when endorsed upon a bill, they become incorporated with, and make a material part of its allegations. This necessarily results from the peculiar course of proceeding in the allowance and institution of prosecutions upon the presentment of a grand jury in that country. The words, ‘ a true bill,’ obviously constitute no part of the description of the offence charged in the indictment. They are not indispensable to the legal authentication of the action of the grand jury. Their absence can subject the accused to no inconvenience or disadvantage. The reason upon which they are elsewhere held to be essential, does not *858 exist in our practice and mode of procedure ; and tberef°re this omission in an indictment is simply the omiss*on a tiirm, which, if oftentimes found convenient and useful, is in reality immaterial and unimportant.” In some of the United States these words are required by statute. Gardner v. The People, 3 Scam. R. 83; Spratt v. The State, 8 Missouri R. 247; McDonald v. The State, Id. 283; Commonwealth v. Walters, 6 Dana’s R. 290; Bennett v. The State, 8 Humph. R. 118; Laurent v. The State, 1 Kansas R. 313. But the statute, in some of them at least, has been held to be directory merely, and the omission of the words is no ground for arresting the judgment. The State v. Merters, 14 Missouri R. 94; Morris (Iowa) 332; 6 Iowa R. 511; 1 Texas R. 142. Whether or not indictmeuts should be signed by the foreman, is also a question on which the authorities are conflicting. The English practice did not require them to be so signed. In The State v. Squire, 10 New Hamp. R. 558, such signing was held to be necessary. But contrary decisions have been made in South Carolina, Horth Carolina, Georgia and Kentucky. The State v. Creighton, 1 Nott & McC. R. 256; The State v. Cox, 6 Ired. R. 440; The State v. Calhoon, 1 Dev. & Bat. R. 374; McGuffie v. The State, 17 Georgia R. 498, 510; Commonwealth v. Walters, 6 Dana’s R. 290.
In this state, the question as to the necessity either of the endorsement of the words “a true bill,” or of the signature of the foreman of the grand jury, has never been decided. In the Commonwealth v. Cawood, 2 Va. Ca. 527, it was held that when a bill of indictment is found by the grand jury, and endorsed “a true bill” by the foreman, it should be brought into court, presented by the grand jury, and then the finding should be recorded ; and that an omission to record the finding, cannot be supplied by a paper purporting to be an indictment, with an endorsement, “a true bill,” and signed by the *859 person wlio was foreman of the grand jury at that term; nor by the recital in the record that he stands indicted, nor by his arraignment, nor by his plea of not guilty. It cannot be intended that he was indicted; it must be shown by the record of the finding. The record of the finding of the grand jury is as essential as the recording of the verdict of the jui’y. In that case, there was not only no record of the finding of the indictment against Cawood,- hut the record showed that at the term at which that indictment was alleged to have been found, various other indictments were found, and the grand jury having nothing further to present were discharged. That is a case of the highest authority. It was argued with great ability by very able counsel both for the Commonwealth and the accused, and was decided by very able judges; and it settled the question as to the necessity of a record of the finding of the indictment by the grand jury. But it does not touch the question as to the necessity of the endorsement or signature aforesaid. "What is said in the opinion of the court about the endorsement of “a true bill” on the indictment, and the signing of it by the foreman of the grand jury, is obiter dictum, and no doubt was induced by regarding the English practice in that respect as ours, in the absence of any decision to the contrary, or of any question being raised in the case on that subject. In fact, as we have seen, even the English practice does not require any signature to the endorsement. Certainly the question did not arise in that case, as there the endorsement was made on the indictment and signed by the foreman of the grand jury, which, with other circumstances occurring in the case, it was contended was equivalent to an entry of the finding on the record, or was sufficient of itself to put the accused upon his trial without such an entry. But the court decided to the contrary, and that the entry of the finding on the record was indispensably necesary. The finding being announced *860 iii the presence of the whole jury, after being called by name in open court, and an entry being made of it on the record of the court, what reason or necessity can there be for requiring the words 44 a true bill,” to be endorsed on the indictment ? In Burgess v. The Commonwealth, 2 Va. Cas. 483, it was held, that where an indictment filled the whole of a sheet of paper, and then folded in another half sheet of the same size, on which half sheet the attorney endorsed, 44 Commonwealth v. Joseph Burgess, Indictment;” and immediately below, in the handwriting of the foreman of the grand jury, was endorsed 44 A true bill. Robert Hamilton, foreman ;” although the said half sheet of paper was blank, except the endorsements, and although it was not otherwise attached to the indictment than being folded around it; yet the indictment enveloped by it must be considered as the indictment on which the grand jury passed, and on which the jury found their verdict. The,general court, after a full conference, without any hesitation, overruled the application for a writ of error to a judgment by which the petitioner was- sentenced to be hanged for murder ; and the opinion of the court, which seems to have been unanimous, was delivered by Dade, J., one of the ablest jurists for his age (he died prematurely) whom this country has ever produced. 44 In this case,” the court said, 44 it is not absolutely necessary to decide, whether the endorsement, 4 a true bill,’ be indispensably requisite to constitute an indictment. If it wrnre necessary to decide this point, it might w'ell deserve to be enquired, whether the law' books in declaring this endorsement to be necessary to make the paper an indictment, have reference to any other than the mere inceptive stages while the subject is in the hands of the grand jury. A written charge preferred by the attorney to the grand jury, is not, when handed to them, an indictment, nor does it become so till sanctioned by them, which sanction is indicated by the above endorsement. So far, and in this stage of the *861 proceedings, the endorsement does indeed stamp on the paper its character of an indictment. But when a still more solemn act has been done, when the grand jury ' has appeared in court, and there openly presented this chai’ge as a true, bill, of which a record has been forthwith made by the court, this higher solemnity may well be supposed to take the place of any minor one, and it would scarcely seem necessary to look beyond this. But for reasons free of all difficulty, the exception cannot be sustained in this case.” And the court then proceeded to state another ground on which it decided the case. It is manifest, however, from what was said in regard to the former question, that if it had been necessary to decide that question, the 'court would have held that, “ when the grand jury has appeared in court, and there, openly, presented the charge as a true bill, of which a record has been forthwith made by the court,” it is perfectly immaterial thereafter to enquire whether the words a “true bill,” were endorsed on the indictment and signed by the foreman of the grand jury. The only useful purpose which could possibly be served by such an endorsement and. signature after the finding is recorded, would be that it might help to identify the paper intended to be found as an indictment by the grand jury. What would be its value in this respect is illustrated by the statement made by the court in the case last cited, in regard to the ground on which it was decided. That statement thus concludes : “ As to the consequences which it is supposed may ensue from the alleged laxity, they are all derived from an extreme hypothesis ; the idea of the officers of the court, in the face of the court and of the public, being guilty of a fraud, which must be inevitably detected.”
It appears from the copy of the record of this case in the County court, wfhich was certified to the Circuit court and constitutes a part of the record of the case in the latter court, which is now before us, that on the 28th *862 of February 1871, the grand jury returned into court, anc^ presented an indictment against George W. Price ^or k°rse stealing, “ a true billwhich indictment is set out in the said copy in words and figures ; and that three days thereafter, tó wit: on the 3d day of March 1871, the prisoner was led to the bar in custody of the jailor, and being arraigned, demanded to be tried in the Circuit court of the county. It does not appear whether the “ words a true bill,” and the signature of the foreman, were endorsed on the indictment or not, except that they do not appear in the said copy as having been so endorsed. Probably they were in fact so endorsed, as the general if not the universal practice is to endorse . them iu such cases. It is much more probable that they were omitted to be copied, though endorsed, than that they were not in fact endorsed. The clerk of the County court probably considered them as forming no part of the indictment, and therefore omitted to copy them. But whether they were in fact endorsed on the indictment or not we consider to be an immaterial question, as the indictment was presented by the grand jury in open court as a true bill, and the finding was entered of record.
We are therefore of opinion that the Circuit court did not err in overruling the demurrer to the indictment.
The next question arises on the fourth bill of exceptions, which was taken to the refusal of the court to grant to the accused a writ of certiorari, on his suggestion of “ a diminution of the record, in this, that the said record does not show that the foreman of the grand jury did endorse on the said indictment * a true bill,’ and the name of the said foreman.” It follows, from what has been already said, that we think there is no error in this respect.
The next question arises on the fifth bill of exceptions, which is, to the action of the court in overruling the motion of the accused to quash the venire facias issued for the trial of this cause, “ on the ground that the said *863 venire facias is not in accordance with the law of the land, and the statute in such case made and provided at the time the prisoner was arrested, committed and indicted, and for other errors apparent on its face.”
The venire facias in this case was issued on the 18th day of August 1871, and the trial, was had on the 15th day of September 1871, after the act approved March 29, 1871, Acts of Assembly 1870-71, p. 357, chap. 262, under and in pursuance of which the said venire facias was issued, went into effect, which was from and after the first day of July 1871, and while the said act w'as in full force. That act, therefore, applies to the case, although it was not in force “ at the time the prisoner was arrested, committed and indicted.” Schedule to the constitution, sec. 4; Chahoon's case, 20 Gratt. 733, 790; Code of 1860, ch. 16, § 18, p. 116. Ko other errors are pointed out in the venire facias, and there are none apparent on its face. "We therefore. think the Circuit court did not err in overruling the motion to quash the venire facias.
The next question arises on the 6th bill of exceptions, which "was taken to an instruction given by the court to the jury, being the 6th in the series of instructions giveD, the other five having been given on the motion of the defendant. The instruction excepted to is in these words:
“ 6th. If the jury shall believe from the evidence that the horse, having been recently stolen, was found in the possession of the prisoner, they are justified in presuming his guilt, unless he shows that he came honestly by it; and his failure to do so, either by positive evidence of the manner in which he came by it, or of his own good character to rebut that presumption of guilt, is a circumstance which the jury may consider in determining whether the prisoner stole the horse, or received him knowing him to be stolen.”
It is not for us to decide in this case, whether the first *864 five of the instructions given by the court to the jury correctly expound the law or not. They were asked for by the accused, and he cannot and does not complain of them. We have only to do with the 6th and last instruction, which he did not ask for, and of which he does complain. It ha3 just been set out in words, and deals, as we see, with the familiar question of the effect as evidence in a prosecution for larceny, of the possession by the accused of the goods mentioned in the indictment, and proved to have been recently before stolen. The bill of exceptions to this instruction sets out no evidence, and does not therefore enable us to determine, whether the question properly arose in the case, or whether or not it was a mere abstraction. The facts proven on the trial, however, are certified in the last bill of exceptions, and we will look to that certificate for them, in passing upon the question we are now considering. That certificate does not show that the horse charged to have been stolen was in the possession of the accused. It' only shows, in regard to that question, that he claimed title to the horse, and said he had a hill of sale for it. There was then no sufficient foundation in the evidence for the instruction, supposing it to have been unexceptionable in other respects. It propounded an abstract point of law, and, therefore, ought not to have been given. Still, if it correctly expounded the law, the judgment ought not to be reversed on the ground that the point was a mere abstraction. We will, therefore, consider the question as if the point had properly arisen in the case, and enquire whether, in that view, the instruction was ‘correct.
The law on this subject seems to he very well settled, and will be found in all the law hooks which treat of evidence in criminal cases. It is, perhaps, as well and briefly laid down in Starkie on Ev., 4th part, p. 840, as anywhere else. “As the caption and asportation,” says that writer, “ can seldom be directly proved by an eye *865 witness, presumptive evidence must in general be resorted to. The most usual and cogent evidence of this nature consists in proof of the prisoner’s possession of the stolen goods. The force of the presumption depends upon the consideration, that the prisoner, who can account for his possession of the goods, will, if that possession be an honest one, give a satisfactory account of it. The effect of this evidence is to throw upon the prisoner the burden of accounting for that possession, and in default, to raise a presumption that he took the goods. Evidence of this nature is by no means conclusive, and it is stronger or weaker as the possession is more or less recent, for the obvious reason that the difficulty of accounting for the possession is increased by the length of time which has elapsed during which the goods may have passed through many hands. The rule is, that recent possession raises a reasonable presumption against the prisoner.” See also 2 Russell on Crimes, 123; Roscoe’s Criminal Evidence, pp. 18-21; Best on Presumptions, p. 304, § 228; 47 Law Library, p. 179; and especially Wills on Circumstantial Evidence, pp. 47-50, 41st Law Library. In a prosecution for larceny, the fact that the stolen property is found upon the person of the defendant, can always be given in evidence against him ; but the strength of the presumption which it raises against the accused, depends upon all the circumstances surrounding the case. Bennett v. The State, 1 Swan R. 411. It is stronger or weaker in proportion to the length of time intervening between the stealing and the finding. The State v. Williams, 9 Ired. R., 140. The possession of stolen property, recently after the theft, is, prima facia evidence that the person found in possession is the thief; but, like all other prima facia evidence, it is liable to be repelled by evidence to the contrary. It may even be repelled by the account given of such possession by the person with whom it is found, if-that account be reasonable in itself and be not disproved by other evidence. What the per *866 son found in possession of stolen property is called upon to do is, to account for how he came by it. In Regina v. Crowhurst, 1 C. and K. 370, 47 Eng. C. L. R., Alderson, B., said to the jury: “In cases of this nature you should take it as a general rule, that when a man in whose possession stolen property is found, gives a reasonable account of how he came by it, as by telling the name of the person from whom he received it, and who* is known to be a real person, it is incumbent on the prosecutor to show that the account is false ; but if the-account given by the prisoner be unreasonable or improbable on the face of it, the onus of proving its truth lies on the prisoner.” Roscoe’s Crim. Ev. 19. If the possession of the prisoner be not proved to be recently after the theft, it is not sufficient to make it incumbent on him to account for such possession unless there be evidence of something' more than the mere fact of possession. "What is a recent possession within the meaning of this rule, is a vexed question, and depends in some measure on the nature of the property, as some articles pass from hand to hand more readily than others. But this is a question for the consideration of the jury. 2 Russell, 123. See the cases on this subject referred to by Russell and Roscoe, supra.
Let us now apply these principles to this case. The first part of the sixth instruction is in these words : “If the jury shall believe from the evidence that the horse, having been recently stolen, was found in the posession of the prisoner, they are justified in presuming his guilt, unless he shows that he came honestly by it.” There seems to be no good ground for objection to this part of the instruction, which is laid down substantially in the terms in which the rule is expressed in some of the law books; as Roscoe’s Crim. Ev., p. 18 ; where it is said, that if it be “proved, or may be reasonably presumed, that the property in question is stolen property, the possessor is bound to show that he came by it honestly ; and if he fail to do so, the presumption is that he is the *867 thief.” .The only objection made to this part of the instruction is, that it treats the presumption as one of law and not of fact. Certainly it is one of fact and not of law; and so we think the instruction, according to its true intent and meaning, treats it. The latter part of the instruction is in these words : “And his failure to do so,” that is, to show that he came honestly by the possession, “either by positive evidence of the manner in which he came by it, or of his own good character, to rebut that presumption of guilt, is a circumstance which the jury may consider in determining whether the prisoner stole'the horse or received him, knowing him to be stolen.” The first objection made to this part of the instruction is, that it assumes the fact of the failure of the prisoner to explain his possession, instead of referring it to the decision of the jury to whom the question properly belonged.. We do not think this is the true meaning of the instruction, but we think it ought to be construed as if it read, “ and his failure to do so, if the jury believe that he did fail to do so,” &c. The instruction was intended to be based upon that hypothesis. Still, we think it would have been better to have left no room for doubt upon the subject, while we think it cannot be predicated of the instruction that it is erroneous in this respect.
But there are- grounds of objection to this part of the instruction which we think are well founded, and they exist in the means by which it is said the prisoner may rebut the presumption of his guilt, arising from-his possession of the property recently after it was stolen; that is, “ either by positive evidence-of the manner in which- he came by it, or of his own good character.” The word “ positive,” here used, is objectionable. It is not incumbent on the prisoner to produce positive evidence to repel the presumption, but it is sufficient for him to produce any kind of legal evidence which may satisfy the jury that he is not guilty. Indeed, if they *868 be so satisfied, from the evidence on the part of the Commonwealth, that will be sufficient. If, on being called on to account for his possession of the stolen property, he give a reasonable account of it, showing he was not the thief, .and which is not disproved by any other evidence in the case, that may be sufficient. But the reference made to the character of the prisoner is still more objectionable. The prisoner may, if he chooses, introduce evidence of his good character in his defence, but the Commonwealth cannot introduce evidence of his bad character to help to make out the charge against him ; and, a fortiori, she cannot rely on any inference of his bad character from his failure to introduce evidence to prove his good character. If he introduce such evidence, the Commonwealth may then introduce countervailing evidence of character. In the absence of any evidence on the subject, the law gives him credit for a good,character, or, rather, protects him from the imputation of a bad character. It requires the case to be decided according to the evidence, and without any reference at all to the character of the prisoner. 2 Russell on Crimes, 784-786; 1 Wharton’s American Criminal Law, § 637, and cases referred to in the notes; and especially, The People v. White, 24 Wend. R. 520, and The same v. Bodine, 1 Denio R. 281, cited by the counsel of the plaintiff in error. We also think the latter part of the instruction is obscure in its meaning, and was calculated to mislead the jury.
We are therefore of opinion that the Circuit court erred in giving the sixth instruction. If the evidence had been such as to make it proper for the court to give any instruction to’the jury on the subject embraced in the said sixth instruction ; that is, if there had been evidence before the jury that the horse in the indictment mentioned, after having been stolen, was found in possession of the prisoner; then the court should have laid down the rule on. the subject to the following effect: *869 “ If property be stolen, and recently thereafter be found in the exclusive possession of the prisoner, then such possession of itself affords sufficient ground for a pre-' sumption of fact that he was the thief; and, in order to repel the presumption, makes it incumbent on him, on being called on for tbe purpose, to account for such possession consistently with his innocence. If he give a reasonable account of it, then it devolves on the Commonwealth to prove that such account is untrue. If he give an unreasonable account of it, then it devolves on the prisoner to sustain such account by other evidence. What is such a recent possession as raises a presumption against a prisoner, in the meaning of the rule, is a question for the jury, and depends upon tbe nature of the property and other circumstances of the particular case. Without undertaking to determine what length of time must elapse to prevent the application of the rule in such a case as this, where a horse is the subject of the supposed larceny, it may be safely said that two months (which appears to have been about the period that elapsed in this case after tbe property is supposed to have been stolen, and before it was found) is not too long to prevent such application.”
The next and last question to be decided in this case arises on the seventh and last bill of exceptions, which was taken to the action of the Circuit court in overruling the motion of the prisoner to set aside the verdict, on the ground that it was contrary to law and to the evidence.
The facts proved on the trial are certified by the court, and, as certified, we think they are insufficient to sustain the verdict of the jury. They show' that the horse in the indictment mentioned belonged to Mrs. Williams, and was stolen from her stable in Kelson county ; that about two months thereafter the horse was found in Kennedy’s stable, in the town of Karmville, he keeping a hotel in the said towm ; that Daniel Price, a brother of the pris *870 oner, was seen at some time, but at what time is not stated, riding a horse, which was no doubt the horse in ■ question, into Farmville ; and that the prisoner, upon being asked whether he claimed the horse in Kennedy’s stable (being the horse in question), replied that he did ; that it was his horse, and he had a bill of sale for it. This is all the evidence to connect the prisoner with the horse and with the larceny of it, and we think it insufficient to sustain the verdict. The certificate does not show when, by whom, and on what terms the horse was put in Kennedy’s stable ; how long it remained there, who exercised ownership over it, and in what way, while it was there, and whether the prisoner during that period exercised any, and, if any, what ownership over it; or had any, and, if any, what connection with it. That the prisoner claimed the horse, and said he had a bill of sale for it, is perfectly consistent with his innocence, in the absence of any evidence to the contrary. A horse is a thing easily sold, and often sold, and is apt to be sold by a thief; and though stolen, may be acquired bona fide by a purchaser, who possibly may not know his vendor nor where to find him. The certificate does not show whether the prisoner produced the alleged bill of sale or not, and if so who was the apparent vendor; whether he was known or not, and, if known, where was his residence, and why he was not produced and examined as a witness on the trial. On these, or some of these subjects, there might and ought to have been testimony on the trial.
"We therefore think that the Circuit court erred in overruling the motion to set aside the verdict.
IJpon the whole we are of opinion that the judgment is erroneous for the reasons and on the grounds aforesaid, and must be reversed, the verdict set aside, and the case remanded for a new trial to be had therein.
Judgment reversed.